UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY S. BAGNELL and <br> JEFFREY S. BAGNELL, ESQ., LLC, <br>           *Plaintiffs,* <br><br> v. <br><br> SIG SAUER, INC., <br>           *Defendant.* | Civil Action No.:  3:25-cv-00625-VAB |

**MEMORANDUM OF LAW IN SUPPORT OF SIG SAUER, INC.'S
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(6), SIG Sauer, Inc. ("SIG") requests that the Court dismiss with prejudice Plaintiffs' Amended Complaint, D.E. # 9, for failure to state claims for libel *per se* (Count One) and for violation of the Connecticut Unfair Trade Practices Act (CUTPA) (Count Two). Plaintiffs have already amended their complaint once; dismissal with prejudice is appropriate because further efforts to amend would be futile.

**Introduction**

The instant lawsuit reflects another attempt by Jeffrey S. Bagnell and Jeffrey S. Bagnell, Esq., LLC (together, "Bagnell") to cast SIG's legitimate free speech as defamatory. As with Bagnell's last attempt, this too should fail.

In October 2022, Bagnell filed claims for defamation and violation of CUTPA against SIG aimed at a March 2022 Press Release discussing a Lanham Act lawsuit brought by SIG against Bagnell for false advertising arising out of Bagnell's creation and publication of an animation containing numerous false and distorted depictions of key internal components of SIG's P320 pistol. After carefully considering the parties' briefing on SIG's motion to dismiss Bagnell's

1

claims and hearing argument, this Court granted SIG's motion, finding that Bagnell's claims "fail[ed] to allege plausible grounds for relief." *Sig Sauer, Inc. v. Bagnell*, No. 3:22-cv-885 (JAM), 2023 U.S. Dist. LEXIS 117633, at *1 (D. Conn. July 10, 2023).

Bagnell's latest defamation and CUTPA claims likewise fail to allege plausible grounds for relief. Bagnell's Amended Complaint targets statements contained in a March 7, 2025, post on SIG's website responding to disinformation proliferating on the internet regarding the SIG P320 (the "P320 Post"). The specific statements at which Bagnell takes aim are not "defamatory statements" as a matter of law because they are non-actionable statements of SIG's opinion. Additionally, the P320 Post is not "of and concerning" Bagnell; it does not even mention Bagnell or his law firm. This glaring absence is fatal to Bagnell's defamation claim under Connecticut law, which requires the allegedly defamatory statement to *identify* the plaintiff. Consequently, Bagnell's Amended Complaint should be dismissed in its entirety.

## Relevant Portion of the Amended Complaint

Bagnell filed an initial Complaint in this lawsuit on April 22, 2025, and subsequently filed an Amended Complaint, D.E. # 9 ("Amended Complaint"). The relevant portions of the Amended Complaint can be found in just two paragraphs (paragraphs 5 and 8). Paragraph 5 contains the full text of the P320 Post. Bagnell then goes on to describe what he contends are the "Defamatory Characterizations of Plaintiffs" in paragraph 8 – but he does so by isolating and rearranging a few phrases from the full statement, changing their context. Paragraph 8 of the Amended Complaint states in its entirety:

> The Statement referred to individuals involved in litigation over the P320 pistol, including "trial attorneys," and accused them of making "baseless allegations," being "engagement hacking grifters," willfully "misrepresenting" facts, spreading "manufactured lies" and "misinformation," "nothing more than individuals seeking to profit," and "hijackers" (sic) of "the truth for profit."

2

Amended Complaint ¶ 8.  The phrases in quotations are taken from various sentences in four separate paragraphs of the P320 Post, while the remainder of paragraph 8 contains Bagnell's characterizations.  As can be seen from a direct comparison, by taking snippets, reordering them and adding his own characterization, Bagnell changes the meaning of the P320 Post.

Specifically, paragraph 8 first contains three snippets (the words "trial attorneys", "baseless allegations" and "misrepresent[ing]") taken from the second paragraph of the P320 Post.  *Compare* Amended Complaint ¶ 8 with ¶ 5.  In full, the second paragraph of the P320 Post states as follows:

> Recently, anti-gun groups, members of the mainstream media, trial attorneys, and other uninformed and agenda driven parties have launched attacks on one of SIG SAUER's most trusted, most tested and most popular products – the P320 pistol.  In all cases, these individuals have an ulterior motive behind their baseless allegations that the P320 can fire without a trigger pull; they have no evidence, no data, and no empirical testing to support any of their claims.  They instead choose to misrepresent clear, negligent discharges as a "design problem."  *See* Amended Complaint ¶ 5.

Paragraph 8 also contains one snippet (the words "manufactured lies") from the third paragraph of the P320 Post.  *Compare* Amended Complaint ¶ 8 with ¶ 5.  In full, the third paragraph of the P320 Post states as follows:

> In the decade since its introduction, the P320 has undergone the most rigorous testing and evaluation of any firearm, by military and law enforcement agencies around the world.  It consistently delivers a proven record of performance and reliability through state-of-the-art engineering, and documented quality control at every stage of its production. Claims that unintended discharges are anything more than negligent handling and/or manufactured lies to support an anti-gun, anti-SIG agenda are false.  Furthermore, lawsuits claims that the P320 is capable of firing without the trigger being pulled have been dismissed in courtrooms around the country.  In addition, multiple plaintiffs' so-called experts have conceded, it is not possible for the P320 to discharge unless the trigger is fully actuated.  *See* Amended Complaint ¶ 5.

In addition, paragraph 8 contains two snippets (the words "engagement hacking grifters" and a modified version of the phrase "highjack the truth for profit") from the fourth paragraph of the P320 Post. *Compare* Amended Complaint ¶ 8 with ¶ 5. In full, the fourth paragraph of the P320 Post states as follows:

> The rhetoric is high, and we can no longer stay silent while lawsuits run their course, and clickbait farming, engagement hacking grifters continue their campaign to hijack the truth for profit. Enough is enough. *See* Amended Complaint ¶ 5.

Finally, Amended Complaint ¶ 8 contains one snippet (the words "nothing more than individuals seeking to profit") from the first paragraph of the P320 Post. *Compare* Amended Complaint ¶ 8 with ¶ 5. In full, the first paragraph of the P320 Post states as follows:

> The P320 CANNOT, under any circumstances, discharge without a trigger pull – that is a fact. The allegations against the P320 are nothing more than individuals seeking to profit or avoid personal responsibility. *See* Amended Complaint ¶ 5.

Contrary to the allegation in the Amended Complaint, the P320 Post does not "refer to individuals involved in litigation over the P320." Nor does it refer to Bagnell, or any other specific attorney. The name "Bagnell" does not appear anywhere in the P320 Post, nor does Bagnell allege that the P320 Post identifies him or his law firm by name. Instead, Bagnell alleges that he "has represented and currently represents" clients in litigation against SIG concerning the P320, and that "[h]e is reasonably understood by the public to be one of the attorneys, if not the primary attorney, referenced in the post." Amended Complaint ¶ 10 [sic].[1] Read in full and in context, none of the snippets constitute a "defamatory statement" against anyone, much less against the one specific Connecticut attorney bringing this lawsuit.

---

[1] The Amended Complaint duplicates the numbering for paragraphs 10 and 11. This reference is to the second paragraph 10.

**Argument**

### I.  Applicable Legal Standards

The standard governing a motion to dismiss under Rule 12(b)(6) is well established.  A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain the plaintiff's grounds for relief.  *See Brownback v. King*, 141 S. Ct. 740, 749 (2021); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

"[W]hile this plausibility pleading standard is forgiving, it is not toothless.  It does not require [the Court] to credit legal conclusions couched as factual allegations or naked assertions devoid of further factual enhancement."  *Stubbs v. Gerken*, No. 3:21CV01525(SALM), 2022 U.S. Dist. LEXIS 177040, at *3 (D. Conn. Sept. 29, 2022) (quoting *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020)).  A complaint that engages in a threadbare recital of the elements of a cause of action but that fails to include supporting factual allegations does not establish plausible grounds for relief.  *See Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019).

Where the defects in a claim are substantive and not amenable to cure, the claim should be dismissed with prejudice.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.").

## II. The Defamation Claim (Count One) Should Be Dismissed Because the Challenged Statements in the P320 Post Are Opinions and Are Thus Not "Defamatory Statements."

To make out a claim for defamation[2] under Connecticut law, Bagnell must demonstrate that "(1) [SIG] published a defamatory statement; (2) the defamatory statement identified [Bagnell] to a third person; (3) the defamatory statement was published to a third person; and (4) [Bagnell]'s reputation suffered injury as a result of the statement." *Gleason v. Smolinski*, 125 A.3d 920, 947 (Conn. 2015).

The statements in the P320 Post at which Bagnell takes aim are opinions, not facts, and therefore they cannot be "defamatory." *See Devone v. Finley*, No. 3:13-CV-00377 (CSH), 2014 U.S. Dist. LEXIS 36356, at *24 (D. Conn. Mar. 20, 2014). "For a statement to be defamatory, it must be one of fact, rather than opinion; thus it must 'relate[] to an event or state of affairs that existed in the past or present and is capable of being known,' as opposed to one which 'is a personal comment about another's conduct, qualifications or character [even if it] has some basis in fact.'" *Devone*, 2014 U.S. Dist. LEXIS 36356, at *24 (*citing Iosa v. Gentiva Health Services, Inc.*, 299 F. Supp 2d 29, 38 (D. Conn 2004)). "Statements of opinion, even if negative or otherwise harmful, cannot as a matter of law, form the basis of a defamation claim." *Stubbs*, 2022 U.S. Dist. LEXIS 177040, at *34 (*quoting Chiaravallo v. Middletown Transit Dist.*, 561 F. Supp 3d 257, 289 (D. Conn 2021)). *See Netscout Sys. v. Gartner, Inc.*, 334 Conn. 396, 410 (2020) (collecting cases).

---

[2] The caption of Count One reads: "Libel *Per Se*." As courts in this District have explained, "[d]efamation is a catch-all term that both encompasses libel (written defamation) and slander (oral defamation)." *Chiaravallo v. Middletown Transit Dist.*, 561 F. Supp. 3d 257, 289 (D. Conn. 2021) (citing *Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. 842, 849 (Conn. App. 2005)). For simplicity's sake, SIG refers to Bagnell's "Libel *Per Se*" claim as a claim for defamation throughout this memorandum. SIG seeks dismissal of Count One in its entirety.

6

Whether a statement is "opinion or rhetorical hyperbole" as opposed to "a factual representation" is a question of law for the court. *Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985). In distinguishing between fact and opinion, courts focus on whether an ordinary person would understand the statement as an expression of the speaker's opinion or as a statement of existing fact. *See Stubbs*, 2022 U.S. Dist. LEXIS 177040, at *35. Moreover, "[c]ontext is a vital consideration in any effort to distinguish a nonactionable statement of opinion from an actionable statement of fact." *Netscout Sys. v. Gartner, Inc.*, 334 Conn. 396, 412 (2020). Courts consider a variety of factors, including (1) the context in which the statements were made and the surrounding circumstances, (2) whether language used was "precise" and "literal" or, instead, was "loose, figurative or hyperbolic," (3) whether statements were "objectively capable of being proved true or false," and (4) whether statements imply "undisclosed defamatory facts as the basis for the opinion." *See Mr. Chow of N.Y.*, 759 F.2d at 226.

The statements from the P320 Post about which Bagnell complains, read in the context of the P320 Post as a whole, reflect SIG's opinions – passionately held and strongly expressed – as to the merits of a wide range of commentary, accusations and attacks lobbed at SIG's P320 from a variety of sources.

The P320 Post initially refers to unidentified "anti-gun groups, members of the mainstream media, trial attorneys, and other uninformed and agenda-driven parties" as having launched attacks at the P320. Read in its full context, the P320 Post does not single out any member of any of these groups, or even any particular attorney (much less Bagnell individually). This paragraph of the P320 Post refers to "attacks" in general; it does not refer to any litigation. It is improper for a plaintiff to take generalized language and pick out isolated phrases, then

7

recast them as a direct attack on an individual's ethics or professional integrity when the publication itself does not expressly make such an accusation. Permitting a plaintiff to manufacture an actionable defamatory statement through subjective recharacterization would invert the governing standard and chill protected speech.[3] If a generalized statement about "anti-gun groups, members of the mainstream media, trial attorneys, and other uninformed and agenda-driven parties" could be converted into a specific allegation against an individual of dishonesty merely because one lawyer identifies himself and claims to feel maligned, the constitutional safeguard for expressions of opinion would be hollow. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) (emphasizing that expressions of opinion are protected by the First Amendment).

     Similarly, the generalized statement that "clickbait farming, engagement hacking grifters continue their campaign to hijack the truth for profit" cannot reasonably be read to be about attorneys bringing lawsuits in general or about Bagnell as one such individual attorney – "clickbait farming" and "engagement hacking" are references to internet behavior – i.e., the phenomenon of posting inflammatory content on the internet to maximize "clicks" or social media engagement so as to drive profit (e.g., revenue from advertisers) – not references to litigation.[4]

---

[3] Bagnell alleges that the P320 Post calls Bagnell "intentionally dishonest and unethical." Amended Complaint ¶ 11. That phrase – "intentionally dishonest and unethical" – does not appear anywhere in the P320 Post. Bagnell created that characterization and is the only person who has tied his name to it.

[4] A simple search for the term "engagement hacking" on the Google search engine notes that "engagement hacking" typically refers to manipulative tactics used to artificially inflate engagement metrics on social media platforms."
https://www.google.com/search?q=engagement+hacking&sca_esv=d2b9df46a597ed26&rlz=1C1GCEA_enUS1067US1067&ei=jxNTaOKAE-yr5NoP6MDN8Ag&ved=0ahUKEwiihNap2vuNAxXsFVkFHWhgE44Q4dUDCBA&uact=5&o

Whether one finds such rhetoric to be spirited or uncivil, the dispositive point is that the P320 Post does not assert any fact objectively capable of being proved true or false about Bagnell.

Moreover, courts have repeatedly found the use of terms like "grifter" and "liar" insufficient to sustain a claim for defamation, as they reflected the speakers' opinions about the plaintiff. *See, e.g.*, *Broughty v. Bouzy*, No. 22-6458 (SDW) (JRA), 2023 U.S. Dist. LEXIS 136681, at *20 (D.N.J. Aug. 7, 2023) (finding defendant's tweets describing plaintiff as a "grifter," "liar," "troll," and participant in a "smear campaign" to be non-actionable opinions); *Russo v. Conde Nast Publ'ns*, 806 F. Supp. 603, 604 (E.D. La. 1992) (finding use of term

---

q=engagement+hacking&gs_lp=Egxnd3Mtd2l6LXNlcnAiEmVuZ2FnZW1lbnQgaGFja2luZzIF EAAYgAQyBRAAGIAEMgsQABiABBiGAxiKBTILEAAYgAQYhgMYigUyCBAAGKIEGIk FMgUQABjvBUjJGVCzDliJFHACeACQAQCYAVGgAY0BqgEBMrgBA8gBAPgBAZgCBK ACpAHCAggQABiABBiwA8ICDhAAGIAEGLADGIYDGIoFwgIIEAAYsAMY7wXCAgsQA BiABBiwAxiiBMICCxAAGLADGKIEGIkFwgIGEAAYFhgemAMAiAYBkAYGkgcBNKAHj wiyBwEyuAeWAcIHAzItNMgHEw&sclient=gws-wiz-serp (last visited June 19, 2025). Many social media sites, internet marketing consultants and commenters discuss the topic. See, e.g., Instagram discourages engagement hacking, and Facebook wants users to know it's cool again - Stacked Marketer (https://www.stackedmarketer.com/news/instagram-discourages-engagement-hacking-and-facebook-wants-users-to-know-its-cool-again/#:~:text=News-,Instagram%20discourages%20engagement%20hacking%2C%20and%20Facebook%20wants,to%20know%20it's%20cool%20again&text=Guess%20you%20shouldn't%20ask,to%20bring%20back%20young%20users) (last visited June 19, 2025); Engagement Hacks On Social Media Platforms  (https://contentstudio.io/blog/social-media-engagement-hacks) (last visited June 19, 2025).
Similarly, a simple Google search for "clickbait farming" describes it as "the practice of using low-paid workers (or increasingly, automated systems) to artificially inflate engagement metrics like clicks, views, likes, and shares on online content. This is done to make content appear more popular than it actually is, often with the goal of attracting more genuine viewers or users or for financial gain through advertising or other monetization strategies."
https://www.google.com/search?q=clickbait+farming&rlz=1C1GCEA_enUS1067US1067&oq=clickbait+farming&gs_lcrp=EgZjaHJvbWUyCQgAEEUYORiABDINCAEQABiGAxiABBiKBT INCAIQABiGAxiABBiKBTINCAMQABiGAxiABBiKBTINCAQQABiGAxiABBiKBTIKCA UQABiiBBiJBTIKCAYQABiiBNIBCTY4MTZqMGoxNagCCLACAfEFz8NJbaS0hEzxB c_DSW2ktIRM&sourceid=chrome&ie=UTF-8 (last visited June 19, 2025).

"grifter" to describe plaintiff in a magazine article not defamatory as a matter of law "[c]onsidering the many slang meanings of the term"). Most recently, the Connecticut Supreme Court held in *Murphy v. Rosen* that statements made by a defendant characterizing a plaintiff on Facebook as a "white supremacist" were non-actionable opinions. 351 Conn. 120, 122 (2025). There, the court concluded that, "although calling someone a 'white supremacist' . . . is a serious accusation," the meaning of that term is "inherently subjective." *Id.* The court then joined the "numerous other jurisdictions that have concluded that these terms are not objectively verifiable and do not, without more, imply the existence of undisclosed defamatory facts" and affirmed dismissal of the plaintiff's defamation claim. *Id.* Courts are careful to decide at the outset, as a matter of law, whether statements like "grifter" are actionable because the First Amendment protects expressions of opinions and "rhetorical hyperbole" from defamation liability. *See, e.g., Ferlauto v. Hamsher*, 88 Cal. Rptr. 2d 843, 849 (1999). Even if the statement had actually called Bagnell a "grifter" (which the P320 Post does not) such language would be a non-actionable opinion and thus cannot support a defamation claim.

Use of hyperbole, even where pejorative, does not strip speakers of the constitutional protection afforded to statements of opinion. In *Greenbelt Coop. Pub. Ass'n v. Bresler*, for example the U.S. Supreme Court reversed a libel judgment based on a statement made by a newspaper that reported that the plaintiff had been characterized as "blackmailing" the city of Greenbelt, Maryland, to obtain zoning variances, as the "word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the plaintiff's] negotiating position extremely unreasonable." 398 U.S. 6, 14 (1970). Similarly, in *Old Dominion Branch No. 496 v. Austin*, the Court concluded that a labor union's use of the terms "scab" and "traitor" to describe the plaintiff were opinions that, "even in the most pejorative terms, [are] protected." 418 U.S.

10

264, 284 (1974). The Second Circuit has likewise held that statements describing a plaintiff as a "sucker," "fool," "frontman," "industrial waste," "pilot of the ship of doom," and "crook[] or moron[]" were hyperbole and thus non-actionable opinion. *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014) (internal quotations omitted) ("While someone may not appreciate being called a fool, it is an expression of one's view of another … and is not itself a fact.").

Finally, the statements in the P320 Post characterizing certain "allegations" or "claims" or "attacks" about the P320 as "baseless" and reflective of "misrepresent[ations]," "lies," or "misinformation" constitute SIG's non-actionable opinions as to the merits of those allegations, claims and attacks. Even in the context of a specific litigation involving an identified counsel (not present in the P320 Post), courts have repeatedly determined that statements condemning an opponent's contentions as "baseless," "absurd," "ridiculous" or "meritless" are non-actionable statements of opinion. *See Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n*, 796 F. Supp. 2d 458, 471 (S.D.N.Y. 2011) (citing cases). Such descriptions are "nothing more than the predictable opinion of one side to the lawsuit." *Ferlauto*, 88 Cal. Rptr. 2d 843, at 850 (internal quotation marks omitted) (concerning descriptions of lawsuit and motion as "stupid," "laughed at," "a joke," "spurious," and "frivolous").

As in the litany of cases described above, any ordinary reader of the statements in the P320 Post would understand these statements to reflect SIG's subjective opinions. The pejorative or hyperbolic nature of the statements does not alter that analysis.

### III.     The Defamation Claim (Count One) Should Be Dismissed Because the P320 Post Is Not "Of and Concerning" Bagnell.

As an additional, and distinct, basis for dismissal of Count One, Bagnell's defamation claim should fail because the P320 Post does not identify Bagnell or his firm by name or otherwise. Consequently, the Amended Complaint fails on an essential element of a defamation

claim under Connecticut law.  *See Devone*, 2014 U.S. Dist. LEXIS 36356, at *25 ("A required element of a prima facie case of defamation is that an allegedly defamatory statement *must identify* the plaintiff to a third person") (emphasis added); *QSP, Inc. v. Aetna Casualty & Surety Co.*, 256 Conn. 343, 356 (2001) ("Where the alleged defamatory statements were not made about the [] plaintiffs, they do not satisfy the 'of and concerning' element crucial to prevailing on a common-law defamation claim.").  The Connecticut Supreme Court looks to the Second Restatement of Torts when determining what qualifies as "of and concerning" the plaintiff.  *QSP*, 256 Conn. at 356 (noting that under the Restatement, "a defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands that it was intended to refer.").

The P320 Post does not name Bagnell or his law firm, there are no extrinsic facts linking the statement specifically to Bagnell, and there is no basis for a reasonable recipient to interpret the statement as referring to Bagnell.  Where the allegedly defamatory statements are not made about Bagnell, they do not satisfy the "of and concerning" element crucial to prevailing on a common-law defamation claim.  *QSP*, 256 Conn., at 356.

Bagnell tries to avoid this fundamental deficiency by alleging that he "has represented and currently represents" clients in litigation against SIG concerning the P320, and adding the conclusory assertion that "[h]e is reasonably understood by the public to be one of the attorneys, if not the primary attorney, referenced in the post."  However, that allegation simply recites one aspect of the elements of the legal standard.  This bare assertion is precisely the type of "threadbare recitals" that courts disregard on a Rule 12(b)(6) motion.  *Iqbal*, 556 U.S. at 663.

Regardless, the P320 Post refers generally to several very broad groups—"anti-gun groups, members of the mainstream media, trial attorneys, and other uninformed and agenda-

12

driven parties [who] have launched attacks"—and qualifies those broad references to an unspecified subset of those who are "uninformed and agenda driven".[5]

The P320 Post also refers to "clickbait farming, engagement hacking grifters" – a non-specific reference to internet-posting of material in search of "clicks" and social media engagement which is colloquially understood as generating internet income.  *See* note 4, above.  Nothing in the challenged statements, context, or surrounding circumstances narrows those broad references to single out a specific Connecticut attorney.  On these facts, the "of and concerning" requirement is not satisfied.

Connecticut courts have dismissed defamation claims where the allegedly defamatory statements did not specifically identify the plaintiff.  *See Devone*, 2014 U.S. Dist. LEXIS 36356, at *25; *see also Held v. Scott Silver & Silver & Assocs.*, No. 3:10-cv-00992 (CSH), 2013 U.S. Dist. LEXIS 148514, at *9 (D. Conn. Oct. 16, 2013) (dismissing [plaintiff's] defamation claim because statements made by [defendant] in an email to a third party did not specifically identify [plaintiff] in a manner that would be understood by a third party as referring to him); *see also CSL Silicones, Inc. v. Midsun Grp. Inc.*, No. 3:14-CV-1897 (CSH), 2018 U.S. Dist. LEXIS 42553, at *99 (D. Conn. Mar. 15, 2018) (finding allegedly defamatory statement not-actionable defamation because it did not mention [party] specifically).

In *Devone*, for example, the court held that the defamation claim failed because most of the alleged statements did not identify or concern the plaintiff.  *See Devone*, 2014 U.S. Dist.

---

[5] There have been, as Bagnell alleges, various P320 lawsuits around the country, litigated by a number of lawyers other than Bagnell.  Some have been dismissed, some have gone to judgment and are on appeal, and others are pending.  Bagnell is not able to point to anything in the P320 Post that identifies Bagnell personally, or differentiates Bagnell from the many other attorneys involved in such cases, or identifies Bagnell within a sub-group of all trial attorneys, whether litigating against SIG or not, who would fit the characterization of being "uninformed and agenda driven."

LEXIS 36356, at *25. The plaintiff, a police officer of the Bridgeport Police Department, brought claims of defamation after the defendant, mother of the plaintiff's grandson, made statements during a custody dispute that allegedly harmed his reputation. In *Devone*, the defendant made various disparaging public statements about the Bridgeport Police Department regarding the custody dispute, like "the Bridgeport police were 'protecting one of their own.'" The court held that statements about the Bridgeport Police Department were not sufficiently identifiable to (of and concerning) the individual Bridgeport police officer-plaintiff to support a defamation claim. *Id*.

As in *Devone*, where the statements about the police department as a whole were not sufficiently specific to be actionable by an individual officer, the generalized reference here to "trial attorneys" is not actionable by Bagnell as an individual. The mere fact that Bagnell is an attorney involved in litigation against SIG does not transform a generalized statement into one "of and concerning" him for defamation purposes. This Court, too, should conclude that – because Bagnell's defamation claim targets statements that did not specifically identify him – it should be dismissed. *Devone*, 2014 U.S. Dist. LEXIS 36356, at *26-7.

### IV. Count Two (CUTPA) Should Be Dismissed Because It Depends On Challenged Statements That Are Not Defamatory.

Where a CUTPA claim is based on allegedly defamatory statements, that claim must fail if those statements are not defamatory. *See, e.g.*, *Netscout*, 334 Conn. at 430 ("Because the defendant's statements about the plaintiff . . . were nonactionable expressions of opinion . . . , we are compelled to conclude that the plaintiff has failed to establish a viable claim within the purview of CUTPA."); *Vaneck v. Countrywide Home Loans Corp.*, CV044001571S, 2006 Conn. Super. LEXIS 151, at *11 (Super Ct. Jan. 11, 2006) (statements that are not defamatory cannot be the basis of a CUTPA claim); *Mello v. Conn. Republican State Cent. Comm.*, 2001 Conn.

14

Super. LEXIS 3228, at *21 (Super. Ct. Nov. 13, 2001) ("Because [Plaintiff] did not satisfy his burden of proving that the statements [challenged] were false or made with actual malice, [Plaintiff] also failed to prove that the [Defendants] violated CUTPA.").

This Court already reached the same conclusion in granting SIG's motion to dismiss Bagnell's counterclaims in the above-referenced Lanham Act case. *See Sig Sauer*, 2023 U.S. Dist. LEXIS 117633, at *12. There, this Court explained that: "Because the press release is not defamatory (as discussed above), there are no grounds to conclude that the issuance of the press release amounted to an unfair or deceptive trade practice in violation of CUTPA." *Id.*

Likewise, here, for the reasons set forth above, the P320 Post does not sufficiently identify Bagnell, and in any case the targeted statements therein are statements of opinion not capable of being adjudicated "false." Accordingly, the P320 Post is not defamatory and cannot form the basis of a CUTPA claim. Count Two must therefore be dismissed.

## **Conclusion**

For the foregoing reasons, SIG requests that the Court dismiss Plaintiffs' Amended Complaint with prejudice.

Dated: June 19, 2025                Respectfully submitted,

SIG Sauer, Inc.

By its attorneys,

*/s/ James R. Smart*
James R. Smart (CT Bar ct20982)
Koch, Garg, Walker & Smart, LLP
1177 High Ridge Rd.
Stamford, CT 06905
Telephone: 203-461-1056
james@kgwslaw.com

Anthony D. Mirenda (*pro hac vice forthcoming*)
Kenny Peralta (*pro hac vice forthcoming*)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone: 617-832-1000
Facsimile: 617-832-7000
adm@foleyhoag.com
kperalta@foleyhoag.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a copy of the foregoing was filed electronically. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated:  June 19, 2025                    */s/ James R. Smart*
                                         James R. Smart