UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY S. BAGNELL and <br> JEFFREY S. BAGNELL, ESQ., LLC, <br> *Plaintiffs,* <br><br> v. <br><br> SIG SAUER, INC., <br> *Defendant.* | Civil Action No.: 3:25-cv-00625-VAB |

**REPLY IN SUPPORT OF SIG SAUER, INC.'S
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendant SIG Sauer, Inc. ("SIG") submits this Reply in Support of its Motion to Dismiss Plaintiffs' Amended Complaint, D.E. # 15.

**Introduction**

Count One ("libel per se") of Plaintiffs' Amended Complaint, which targets a March 7, 2025, post on SIG's website responding to disinformation proliferating on the internet regarding the SIG P320 (the "P320 Post"), fails to state a claim because the statement at issue is opinion, and because it is not "of and concerning" Plaintiffs. Count Two ("CUTPA") fails because it is entirely dependent on the viability of Count One. Plaintiffs' Opposition is premised on a fundamental mischaracterization of the P320 Post. Rather than addressing the actual language as it appears in context, Plaintiffs repeatedly isolate, rearrange, and repackage select phrases to try to create the impression that the P320 Post was directed at Mr. Bagnell. This is not what the P320 Post says. On its face, the P320 Post speaks of a broad and amorphous collection of critics with agendas, described as "anti-gun groups, members of the mainstream media, trial attorneys, and other uninformed and agenda-driven parties." Plaintiffs' attempt to recast this as a direct reference to

1

an individual (Mr. Bagnell) or even to a small, readily identifiable group of individuals, is not supported by the text.[1]

At the motion to dismiss stage, the Court must evaluate the actual words of the P320 Post in their full context, not Plaintiffs' selective recharacterizations. The burden rests with Plaintiffs to plead facts that plausibly state a claim under Fed. R. Civ. P. 8., and that burden cannot be met by rewriting or distorting the challenged statement. The P320 Post does not single out Mr. Bagnell or any specific individual, nor does it limit its commentary even to "trial attorneys" as a discrete group. Instead, it references a wide range of actors and opinions, making clear that the content is directed at a large, indeterminate collection of people. Plaintiffs' Opposition only underscores this deficiency—re-characterizing, paraphrasing, and selectively quoting in hopes of manufacturing a personal libel where none exists. The Court should read the statement as a whole and dismiss Plaintiffs' Amended Complaint with prejudice.

## Argument

**I. Plaintiffs' Opposition Fails to Show the P320 Post Contains Actionable Statements of "Objective Fact".**

Despite Plaintiffs' arguments to the contrary, the statements in the P320 Post are nonactionable opinions, not objective facts, so they cannot form the basis for a defamation claim. *See Netscout Sys. v. Gartner*, Inc., 334 Conn. 396, 410 (2020) ("To be actionable, the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion.") (citing *Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*, 759 F.2d 219, 229-30 (2d Cir. 1985)); *Stubbs v. Gerken*, No. 3:21CV01525(SALM), 2022 U.S. Dist. LEXIS 177040,

---

[1] Plaintiffs' Opposition includes numerous allegations regarding the P320 and references to other lawsuits and alleged incidents. While SIG disputes these characterizations and allegations, such factual disputes are not relevant on a motion to dismiss and have no bearing on the purely legal issues before the Court.

at *34 (D. Conn. Sept. 29, 2022) (quoting *Chiaravallo v. Middletown Transit Dist.*, 561 F. Supp. 3d 257, 289 (D. Conn. 2021)).

Courts in Connecticut have consistently emphasized that this distinction depends on the context in which the statement is made and whether an ordinary person would interpret it as a factual assertion or merely an opinion. *Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 111-12 (1982) ("This distinction between fact and opinion cannot be made in a vacuum, however, for although an opinion may appear to be in the form of a factual statement, it remains an opinion 'if it is clear from the context that the maker is not intending to assert another objective fact but only his personal comment on the facts which he has stated.'") (quoting *Mashburn v. Collin*, 355 So. 2d 879, 885 (La. 1977)); *Stubbs*, 2022 U.S. Dist. LEXIS 177040, at *35 ("Thus, the important point is whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact.") (quoting *Wynn v. New Haven Bd. of Educ.*, No. 3:21CV00925(SVN), 2022 U.S. Dist. LEXIS 65403, at *3 (D. Conn. Apr. 8, 2022)).

Plaintiffs' Opposition strains the imagination in claiming that the P320 Post accuses Mr. Bagnell personally of being untruthful, fabricating evidence, and engaging in fraudulent conduct in his legal practice for the sake of profit. None of those statements appear in the P320 Post. Examining the actual text reveals that Plaintiffs cobbled together snippets from three separate paragraphs in the P320 Post and then recharacterized those snippets. Moving from the actual language of the P320 Post to the version manufactured by Mr. Bagnell in the Opposition requires multiple conjectures.

Defendant's initial memorandum parsed out the various instances where Plaintiffs selected and distorted statements made in the P320 Post to craft their ensuing characterizations. *See* D.E.

# 16. at 2-4, 7-11. As explained more fully there, the second paragraph of the P320 Post states as follows:

> Recently, anti-gun groups, members of the mainstream media, trial attorneys, and other uninformed and agenda-driven parties have launched attacks on one of SIG SAUER's most trusted, most tested, and most popular products – the P320 pistol…**they have no evidence,** no data, and no empirical testing to support any of their claims. **They instead choose to misrepresent clear, negligent discharges as a "design problem."** *See* Amended Complaint ¶ 5.

The relevant language of paragraph three of the P320 Post states as follows:

> [The P320] consistently delivers a proven record of performance and reliability through state-of-the-art engineering, and documented quality control at every stage of its production. **Claims that unintended discharges are anything more than negligent handling and/or manufactured lies to support an anti-gun, anti-SIG agenda are false.** *Id.* at ¶ 5.

The relevant language of paragraph four of the P320 Post states as follows:

> The rhetoric is high, and we can no longer stay silent while lawsuits run their course, and **clickbait farming, engagement hacking grifters continue their campaign to highjack the truth for profit.** *Id.* at ¶ 5.

Despite emphasizing the importance of viewing the post's statements in context, Plaintiffs themselves decline to read the P320 Post in its entirety. Not once does the P320 Post name Mr. Bagnell or even reference him in any way that would lead an ordinary person to reasonably believe he was the target. The post broadly refers to "anti-gun groups, members of the mainstream media, trial attorneys, and other uninformed and agenda-driven parties" launching attacks on SIG's P320 pistol. D.E. # 9. ¶ 5. It goes on to use even more broad terms: "individuals seeking to profit or avoid personal responsibility," the "anti-gun mob," "clickbait farming, engagement hacking grifters." *Id.* ¶ 5. The only reference to lawyers in the P320 Post appears in paragraph two. Notably, as explained in Defendant's initial memorandum, the reference to "clickbait farming, engagement hacking grifters" appears in the penultimate paragraph of the P320 Post and is

squarely directed at internet blog behavior. *See* D.E. # 16. at 8 n.4. Terms like "clickbait farming" and "engagement hacking" cannot reasonably be interpreted as referring to either lawyers broadly or Mr. Bagnell specifically.

Read in context, these statements are opinions. Statements of opinion are nonactionable unless they imply undisclosed objective facts. *Netscout*, 334 Conn. at 412. The Connecticut Supreme Court has articulated "three basic, overlapping considerations" in making this determination: "(1) whether the circumstances in which the statement is made should cause the audience to expect an evaluative or objective meaning; (2) whether the nature and tenor of the actual language used by the declarant suggests a statement of evaluative opinion or objective fact; and (3) whether the statement is subject to objective verification." *A Better Way Wholesale Autos, Inc. v. Better Bus. Bureau of Conn.*, 221 Conn. App. 1, 19 (2023) (quoting *Netscout,* 334 Conn. at 414)).

When a court makes this determination, it does not look at the statement through the plaintiff's lens: "whether a statement should be viewed as one of fact or one of opinion must be made from the perspective of an 'ordinary reader' of the statement." *Mr. Chow of N.Y.*, 759 F.2d at 224. Because Plaintiffs are unable to rely on the text of the post itself to support their arguments, the Opposition argues that one form in which the P320 Post was published—"an *official corporate press release*"—somehow renders the entire statement to be objective fact rather than opinion. Notably, Plaintiffs cite no case law to support this argument. An opinion (including one using hyperbolic terms) expressed on a website or in a press release remains just as much an opinion as if it had been posted on Twitter (which this one was), or on any other forum. *See Broughty v. Bouzy*, 2023 U.S. Dist. LEXIS, 136681 *12 (D.N.J. Aug. 7, 2023) (finding defendant's tweets describing plaintiff as a "grifter," "liar," "troll," and participant in a "smear campaign" to

be nonactionable opinions).  Any ordinary reader would interpret the language of the P320 Post responding to a wide range of commentary, accusations, and attacks directed at SIG's P320 from a variety of sources, as SIG's passionate opinions defending what it perceives to be misinformation being disseminated about its product.

Opinions, "even in the most pejorative terms," are protected.  *See Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 284 (1974).  The words used—"The rhetoric is high, and we can no longer stay silent while lawsuits run their course, and clickbait farming, engagement hacking grifters continue their campaign to highjack the truth for profit"—when read in context, are neither specific, concrete, nor objectively verifiable assertions about Plaintiffs.  D.E. # 9.  ¶ 5.  Nor are they objectively verifiable assertions about any of the disparate groups mentioned.

Plaintiffs' attempt to distinguish *Netscout* is unavailing.  As Plaintiffs note, the Connecticut Supreme Court found that the report at issue in *Netscout* "suggests an imprecise and irreducibly subjective meaning that cannot be understood to convey a statement of fact."  *Netscout*, 334 Conn. at 429.  Crucial to the Court's decision was the context: the report was understood by its intended audience as subjective analysis and opinion, incapable of being proven true or false: "…a reasonable purchaser of the defendant's research would understand that comparative ratings of products and services cannot be strictly objective."  *Id.*  at 430.  The Court in *Netscout* made clear that even specific claims of objectivity or truth do not transform opinion into fact: "That the defendant claimed a measure of objectivity in its marketing materials did not convert its vaguely worded, comparative and evaluative statements into express or implied defamatory factual statements."  *Id.*  at 422-23.

Finally, Plaintiffs' attempt to distinguish *Murphy v. Rosen*, 351 Conn. 120 (2025) is also unavailing.  Plaintiffs acknowledge that the Court in *Murphy* emphasized that the term "white

6

supremacist" was used in the heated context of an online exchange involving name-calling among specifically identified parties, and yet that was not enough to support a defamation claim. Here, while the context was similarly heated, involving a media frenzy across multiple platforms making all manner of attacks and accusations, there were not even any specific feuding parties identified. Language like "clickbait farming, engagement hacking grifters" and calls for action directing that the "[i]ndustry, take notice" can hardly be characterized as a dispassionate, objectively verifiable factual statement, despite Plaintiffs' arguments to the contrary. D.E. # 9. ¶ 5.

## II.    Plaintiffs' Fail to Show the P320 Post Is "Of and Concerning" Them.

Plaintiffs' attempt to satisfy the "of and concerning" requirement is fundamentally deficient and cannot survive a motion to dismiss. The P320 Post refers broadly to "anti-gun groups, members of the mainstream media, trial attorneys, and other uninformed and agenda-driven parties." D.E. # 9. ¶ 5. This sweeping reference to a large, indeterminate collection of groups is a far cry from the specificity required under Connecticut law to support a defamation claim. *QSP, Inc. v. Aetna Casualty & Surety Co.*, 256 Conn. 343, 356 (2001) ("Where the alleged defamatory statements were not made about the [] plaintiffs, they do not satisfy the 'of and concerning' element crucial to prevailing on a common-law defamation claim.").

Plaintiffs assert that they are "reasonably understood by the public to be one of the attorneys, if not the primary attorney, referenced in the post." D.E. # 17. The P320 Post nowhere mentions Mr. Bagnell or his law firm, makes no specific reference to his personal conduct, cases, or professional identity, and does not contain any language that would reasonably identify him to the ordinary reader. While Mr. Bagnell may want the P320 Post to be about him as an individual, the only person claiming that it is about him is Mr. Bagnell himself. Instead, the P320 Post addresses a broad collection of groups. Nothing in the challenged statements,

7

context, or surrounding circumstances narrows those broad references, much less singles out a specific Connecticut attorney. On these facts, the "of and concerning" requirement is not remotely satisfied.

Plaintiffs' Opposition makes a two-step analysis, but both steps fail. First, Plaintiffs claim that the P320 Post calls Plaintiffs "intentionally dishonest and unethical,"—but those words do not appear in the P320 Post and can only be reached through a chain of inferences and characterizations drawn from opinions, not facts. *Id.* ¶ 11. Second, Plaintiffs claim the public would reasonably identify him as one of the attorneys referenced, yet Plaintiffs offer no facts showing how anyone would single him out from the broad collection of groups mentioned (that includes anti-gun groups, members of the mainstream media, and other uninformed and agenda-driven parties in addition to unspecified trial attorneys). *Id.* ¶ 10. Such conclusory allegations are exactly the type of "threadbare recitals" that fail under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

The cases Plaintiffs cite in the Opposition do not help their argument.[2] Plaintiffs' reliance on cases such *Elias v. Rolling Stone LLC*, 872 F.3d 97 (2d Cir. 2017) and *Brady v. Ottaway Newspapers, Inc.*, 84 A.D.2d 226, (N.Y. App. Div. 1981) is misplaced. In those cases, the defamatory statements were directed at small, clearly defined groups where each individual member could plausibly be identified as a target of the defamatory statement. For example, in *Elias*, the Second Circuit found that a statement about "all then-members" of a specific fraternity

---

[2] *Geisler v. Petrocelli*, 616 F.2d 636 (2d Cir. 1980) is distinguishable from the present case because it was decided under the now-abrogated "no set of facts" standard, which the Supreme Court expressly rejected in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007). Thus, reliance on *Geisler* is misplaced, as the current standard demands concrete factual allegations that plausibly show the statement was "of and concerning" the plaintiff, which Plaintiffs here have failed to provide. In any event, the plaintiff in *Geisler* was specifically referenced (by her "precise name") in the challenged publication. Geisler, 616 F.2d at 638.

(at the time of an alleged rape) could be reasonably understood to refer to each member individually.  *Elias*, 872 F.3d 97, at *108 (applying New York law).

Similarly, the decision in *Neiman-Marcus Co. v. Lait*, 107 F. Supp. 96 (S.D.N.Y. 1952), also applying New York law, relied on the proposition that for a small group libel claim to proceed, the group must be small and "each and every member" must be referred to.  Here, by contrast, the P320 Post encompasses a disparate collection of groups, and nothing in the P320 Post narrows the focus to Plaintiffs or any other specific attorney.  As the Court held in *Devone v. Finley*, statements about the Bridgeport Police Department as a whole were not actionable by an individual officer because they did not specifically identify him.  *Devone v. Finley*, No. 3:13-CV-00377 (CSH), 2014 U.S. Dist. LEXIS 36356, at *25 (D. Conn. Mar. 20, 2014).  The same principle applies here; a generalized reference to any of the disparate groups mentioned are not actionable by Plaintiffs as an individual.

### III. The CUTPA Claim Cannot Survive Because It Is Entirely Derivative of the Defamation Claim.

Plaintiffs' CUTPA claim is wholly derivative of their defamation claim.  The failure of the defamation claim is fatal to the CUTPA claim as a matter of law.  As set out in Defendant's initial memorandum, Connecticut courts are clear: if the underlying statements are not actionable as defamation—because they are nonactionable opinions, rhetorical hyperbole, or do not identify the plaintiff—then they cannot form the basis of a CUTPA violation.  D.E. # 16. at 14.

Here, Plaintiffs' Amended Complaint identifies no conduct by Defendant apart from the challenged statements, and their own Opposition confirms that the CUTPA claim is "based on the same statements." D.E. # 17. at 19.  The sole basis for the CUTPA claim is the same alleged defamation, and if the defamation claim fails, the CUTPA claim necessarily fails as well. Arguments regarding the commercial context or supposed unfairness of Defendant's statements

are irrelevant, as the only conduct at issue is the allegedly defamatory P320 Post.  Plaintiffs cannot manufacture a CUTPA violation out of non-actionable speech simply by relabeling it as "unfair" or "deceptive."  Courts have repeatedly rejected attempts to use CUTPA as a backdoor for defamation claims that do not meet the required legal standard.  *See Netscout Sys.*, 334 Conn. 396; *Lafferty v. Jones*, 229 Conn. App. 487, 537 (Conn. App. 2024).  Because the Amended Complaint fails to allege any independently actionable unfair trade practice apart from the non-defamatory statements, Count Two should be dismissed in its entirety.

## Conclusion

For the foregoing reasons, SIG requests that the Court dismiss Counts One and Two of Plaintiffs' Amended Complaint with prejudice.

Dated:  July 23, 2025

Respectfully submitted,

SIG Sauer, Inc.

By its attorneys,


*/s/ James R. Smart*
James R. Smart (CT Bar ct20982)
Koch, Garg, Walker & Smart, LLP
1177 High Ridge Rd.
Stamford, CT 06905
Telephone: 203-461-1056
james@kgwslaw.com

Anthony D. Mirenda (*pro hac vice forthcoming*)
Kenny Peralta (*pro hac vice forthcoming*)
Foley Hoag LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone:  617-832-1000
Facsimile:  617-832-7000
adm@foleyhoag.com
kperalta@foleyhoag.com

## CERTIFICATE OF SERVICE

  I hereby certify that on this date, a copy of the foregoing was filed electronically. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: July 23, 2025          */s/ James R. Smart*
                    James R. Smart