UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JEFFREY S. BAGNELL and
JEFFREY S. BAGNELL, ESQ., LLC,
*Plaintiffs*,

v.

SIG SAUER, INC.,
*Defendant.*

No. 3:25-cv-00625 (VAB)

## RULING AND ORDER ON MOTION TO DISMISS

Jeffrey S. Bagnell and Jeffrey S. Bagnell, Esq., LLC (collectively, the "Plaintiffs") have

sued Sig Sauer, Inc. ("Sig Sauer"), alleging libel *per se* under Connecticut common law and

Conn. Gen. Stat. § 52-237, and a violation of the Connecticut Unfair Trade Practices Act, Conn.

Gen. Stat. § 42-110a *et seq.* ("CUTPA"). Am. Compl. ¶¶ 45–56, ECF No. 9 ("Am. Compl.").

Sig Sauer has moved to dismiss the Amended Complaint. Sig Sauer, Inc.'s Mot. to

Dismiss Pls.' Am. Compl., ECF No. 15 ("MTD").

For the following reasons, the motion to dismiss is **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Mr. Bagnell, an attorney, has allegedly represented clients against Sig Sauer in cases

involving the P320 pistol since June 2017. Am. Compl. ¶ 10. He is allegedly a resident of

Connecticut. *Id.* ¶ 1.

Sig Sauer is allegedly the world's third largest small arms manufacturer and allegedly

manufactures the P320. *Id.* ¶ 5. It allegedly is a Delaware corporation with its principal place of

business in New Hampshire. *Id.* ¶ 2.

On or about March 7, 2025, Sig Sauer allegedly published a statement titled "The Truth About the P320" (the "Statement") on its Instagram, Facebook, and public website. *Id.* ¶ 5. The Statement is allegedly as follows:

> The P320 CANNOT, under any circumstances, discharge without a trigger pull – that is a fact. The allegations against the P320 are nothing more than individuals seeking to profit or avoid personal responsibility.
>
> Recently, anti-gun groups, members of the mainstream media, trial attorneys, and other uninformed and agenda-driven parties have launched attacks on one of SIG SAUER's most trusted, most tested, and most popular products – the P320 pistol. In all cases, these individuals have an ulterior motive behind their baseless allegations that the P320 can fire without a trigger pull; they have no evidence, no data and no empirical testing to support any of their claims. They instead choose to misrepresent clear, negligent discharges as a "design problem."
>
> In the decade since its introduction, the P320 has undergone the most rigorous testing and evaluation of any firearm, by military and law enforcement agencies around the world. It consistently delivers a proven record of performance and reliability through state-of-the-art engineering, and documented quality control at every stage of its production. Claims that unintended discharges are anything more than negligent handling and/or manufactured lies to support an anti-gun, anti-SIG agenda are false. Furthermore, lawsuits claiming that the P320 is capable of firing without the trigger being pulled have been dismissed in courtrooms around the country. In addition, multiple plaintiffs' so-called experts have conceded, it is not possible for the P320 to discharge unless the trigger is fully actuated.
>
> The rhetoric is high, and we can no longer stay silent while lawsuits run their course, and clickbait farming, engagement hacking grifters continue their campaign to highjack the truth for profit. Enough is enough.
>
> From the courts of law to the court of public opinion we will combat the lies and misinformation with the truth. SIG SAUER stands behind the quality, safety, and design of all our products – especially the P320.
>
> Industry, take notice; what's happening today to SIG SAUER with the anti-gun mob and their lawfare tactics will happen tomorrow at another firearms manufacturer, and then another.

Today, for SIG SAUER – it ends.

*Id.* ¶ 5.

At the time of publication, Sig Sauer was allegedly aware of the allegedly hundreds of incidents where the P320 discharged without a trigger pull. *See id.* ¶¶ 33–38. Sig Sauer also allegedly knew that courts had allegedly rejected the argument that it was impossible for the P320 to discharge without a trigger pull. *See id.* ¶¶ 18–23. Finally, Sig Sauer allegedly had, in its own internal documents, admitted to the potential for discharge without a trigger pull. *Id.* ¶¶ 24–32.

The Plaintiffs allege that the Statement is defamatory towards Mr. Bagnell as one of the "trial attorneys" who has represented clients against Sig Sauer in P320 litigation by characterizing him as dishonest and unethical. *Id.* ¶¶ 8–11.

On or about March 10, 2025, the Plaintiffs allegedly served Sig Sauer with a written demand to correct or retract the Statement within thirty days. *Id.* ¶ 41. Sig Sauer allegedly refused to correct or retract the Statement. *Id.* ¶ 42.

### B. Procedural History

On April 22, 2025, the Plaintiffs filed their initial Complaint. Compl., ECF No. 1.

On April 25, 2025, the Plaintiffs amended their Complaint. Am. Compl., ECF No. 9.

On June 19, 2025, Sig Sauer filed a motion to dismiss and an accompanying memorandum. MTD; Mem. of L. in Supp. of Sig Sauer, Inc.'s Mot. to Dismiss Pls.' Am. Compl., ECF No. 16 ("MTD Mem.").

On July 9, 2025, the Plaintiffs filed an opposition memorandum. Mem. in Opp. to Sig Sauer Inc.'s Mot. to Dismiss, ECF No. 17 ("Opp'n").

On July 23, 2025, Sig Sauer filed a reply. Reply in Supp. of Sig Sauer, Inc.'s Mot. to Dismiss Pls.' Am. Compl., ECF No. 24 ("Reply").

## II.   STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.   DISCUSSION

Sig Sauer argues that the Complaint should be dismissed because the Plaintiffs fail to state a claim for libel *per se* and for a violation of CUTPA.

The Court addresses the libel *per se* claim first, and then the CUTPA claim to the extent necessary.

### A.  The Libel *Per Se* Claim

"Defamation is comprised of the torts of libel and slander: slander is oral defamation and libel is written defamation." *Skakel v. Grace*, 5 F. Supp. 3d 199, 206 (D. Conn. 2014). "To establish a prima facie case of defamation [under Connecticut law], the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 217 (2004).

"When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. He is required neither to plead nor to prove it."

*Urb. v. Hartford Gas Co.*, 139 Conn. 301, 308 (Conn. 1952). To be "actionable per se," "the libel must be one which charges a crime which involves moral turpitude or to which an infamous penalty is attached." *Proto v. Bridgeport Herald Corp.*, 136 Conn. 557, 566 (Conn. 1950). "The modern view of this requirement is that the crime be a chargeable offense which is punishable by imprisonment." *Skakel*, 5 F. Supp. 3d at 206 (quoting *Battista v. United Illuminating Co.*, 10 Conn. App. 486, 493 (Conn. App. Ct. 1987)) (collecting cases).

Sig Sauer argues that the Plaintiffs have failed to state a libel *per se* claim because the Statement consists of its opinion, and therefore cannot be defamatory. MTD Mem. at 6–11. In its view, the Statement contains generalized claims that cannot be characterized as attacking the credibility of the Plaintiffs. *See id.* at 7–8. And terms like "grifters" and "liars" in the Statement are insufficient to state a defamation claim because they reflect opinion. *Id.* at 9–10. Additionally, they argue that the Statement does not identify the Plaintiffs, nor can be interpreted as referring to the Plaintiffs, and thus the Plaintiffs have failed to meet the "of or concerning" element for defamation. *Id.* at 11–14.

The Plaintiffs argue that Sig Sauer's Statement cannot be opinion because of the context, the language used, and the fact that it can be objectively verified. Opp'n at 11–15. In their view, the fact that the Statement was a press release, used specific accusations, and was presented as objective facts over which Sig Sauer had superior knowledge, all support finding that that the Statement was not opinion. *Id.* Additionally, the Plaintiffs argue that the Statement can be understood to refer to the Plaintiffs because there are few lawyers who litigate P320 claims, and, in their view, the Plaintiffs are the most publicly prominent. *Id.* at 10.

The Court agrees.

"[G]enerally, a defendant cannot be held liable [for defamation] for expressing a mere opinion." *NetScout Sys., Inc. v. Gartner, Inc.*, 334 Conn. 396, 410 (2020) (collecting cases). "[T]he distinction between actionable statements of fact and nonactionable statements of opinion is not always easily articulated or discerned. The difficulty arises primarily because the expression of an opinion may, under certain circumstances, reasonably be understood to imply the existence of an underlying basis in an unstated fact or set of facts." *Id.* at 411–12 (internal citations omitted).

"Context[, therefore,] is a vital consideration in any effort to distinguish a nonactionable statement of opinion from an actionable statement of fact." *Id.* at 412. "[A]lthough no uniform test exists, . . . [o]ne prevalent approach . . . uses a three part test to determine whether a reasonable fact finder could conclude that an expression of opinion implies an actionable assertion of fact: '(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false.'" *Id.* at 413 (quoting *Partington* v. *Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995)) (collecting cases).

Here, Sig Sauer's allegedly defamatory statements amount to accusing individuals who allege that the P320 discharges without a trigger pull of lying and as being motivated by "profit or [to] avoid personal responsibility." *See* Am. Compl. ¶ 5 ("The allegations against the P320 are nothing more than individuals seeking to profit or avoid personal responsibility."); *id.* ("Recently, anti-gun groups, members of the mainstream media, trial attorneys, and other uninformed and agenda-driven parties have launched attacks on . . . the P320 pistol. In all cases,

these individuals have an ulterior motive behind their baseless allegations that the P320 can fire without a trigger pull[.]").

Even if these statements are opinions, as Sig Sauer argues, these opinions may still be actionable because they "impl[y] that there are undisclosed defamatory facts which justify the opinion." *Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 118 (1982); *see also NetScout Sys.*, 334 Conn. at 411–12 ("[A]n opinion may, under certain circumstances, reasonably be understood to imply the existence of an underlying basis in an unstated fact or set of facts."); 3 Restatement (Second), Torts § 566 (1977) ("A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.").

Recently, the Connecticut Supreme Court discussed when a statement may "impl[y] the existence of undisclosed defamatory facts." *Murphy v. Rosen*, 351 Conn. 120, 129 (2025). "[W]hen evaluating whether an ambiguous statement implies defamatory facts or, rather, is merely a statement of opinion, the context in which the statement is made is critical." *Id.* at 132. "To analyze the context of a statement, courts generally consider '(1) whether the circumstances in which the statement is made should cause the audience to expect an evaluative or objective meaning; (2) whether the nature and tenor of the actual language used by the declarant suggest a statement of evaluative opinion or objective fact; and (3) whether the statement is subject to objective verification.'" *Id.* at 133 (quoting *NetScout*, 334 Conn. at 414).

Analysis of these factors supports finding that "a reasonable juror could find [the Statement] to be defamatory and either to be factual or to imply undisclosed defamatory facts." *NetScout*, 334 Conn. at 430–31. The circumstances of a corporate press release, unlike for example a news article, may suggest a statement of opinion rather than factual evaluation. *See,*

8

*e.g.*, *Live Face on Web, LLC v. Five Boro Mold Specialist Inc.*, No. 15 CV 4779-LTS-SN, 2016 WL 1717218, at *3 (S.D.N.Y. Apr. 28, 2016) ("[T]he media vehicles used to disseminate the Publications – a Wordpress blog, social media posts, and an unsigned press release complaining about litigation tactics – suggest to readers that they contain opinions, not facts, and they are written in an amateurish fashion."); *cf. NetScout*, 334 Conn. at 420 ("Reasonable viewers, and certainly those consumers operating in the sophisticated market involved here, understand that these ratings normally rest, at bottom, on inherently and irreducibly subjective evaluations of value, quality and performance."). *But see Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 724 (S.D.N.Y. 2014) ("[D]ecisions from courts in this Circuit suggest that defamatory statements published on Facebook and Twitter, as well as statements made in press releases, could indeed be actionable in defamation suits.").

Sig Sauer's language, however, strongly suggests that the Statement is fact. The Statement begins with "[t]he P320 CANNOT, under any circumstances, discharge without a trigger pull – that is a fact." Am. Compl. ¶ 5. It continues by stating that those alleging claims against the P320 "have no evidence, no data and no empirical testing to support any of their claims." *Id.* Conversely, "the P320 has undergone the most rigorous testing and evaluation," and the "plaintiffs' so-called experts have conceded[ that] it is not possible for the P320 to discharge unless the trigger is fully actuated." *Id.* The Statement's emphasis on facts, evidence, and testing suggests to a reasonable juror that the alleged opinion is one based in fact. *See Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 147 (2d Cir. 2000) ("In light of the inclusion of the statement in an otherwise fact-laden directory, the description of Flamm as an 'ambulance chaser' might imply to the reader of the directory that Flamm engages in the unethical solicitation of clients.").

9

Finally, the underlying facts, i.e., whether the P320 can discharge without a trigger pull, can be objectively verified. Taking the Plaintiffs' allegations as true, which the Court must do at this stage, it is possible for the P320 to discharge without a trigger pull. *See, e.g.*, *id.* ¶ 17 ("Many of these lawsuits . . . involved sworn testimony and expert reports contradicting Sig's blanket 'impossibility' claim."); *Mulvihill v. Spinnato*, 228 Conn. App. 781, 800 ("Importantly, the critical statement of fact in the defendant's Zillow post is subject to objective verification. Although the defendant stated that the plaintiff advised her to list the property for '$100k less [than] we actually got,' the plaintiff provided a sworn affidavit indicating that he provided her with a comparative market analysis that recommended a sales price of $210,900 for the property. The defendant denied that averment, creating an issue of material fact to be resolved by the trier of fact.").

Because the Statement could reasonably be read to imply that it is based on an undisclosed defamatory fact, the Plaintiffs have satisfied the first disputed element: publication of a defamatory statement. *See Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, 596 F. Supp. 2d 497, 504–05 (D. Conn. 2009) ("While in a vacuum, the statements do not appear to be direct accusations, they could reasonably be read to imply that they are based on undisclosed defamatory facts, which would strip the statements of any privilege. Thus, whether the moving parties' statements are intended to state an objective fact or are intended to make a personal observation of the facts is unascertainable, and therefore the motion to dismiss the defamation count is denied." (citation modified)); *Jaggon v. Cmty. Health Servs. Inc.*, No. 3:18-CV-0458 (JCH), 2018 WL 6201707, at *3 (D. Conn. Nov. 28, 2018) ("Because the allegations plausibly allege that the statements by CHS' agents were mixed statements of opinion, they are sufficient to raise a claim of defamation under Connecticut law.").

10

As to the second element, identification, the Plaintiff must "satisfy the 'of and concerning' element . . . to prevail[] on a common-law defamation claim." *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 356 (2001). The Statement need not specifically name the Plaintiff. Instead, "[a] plaintiff must 'reasonably' understand under all the circumstances that an allegedly defamatory statement was intended to refer to him." *Dontigney v. Paramount Pictures Corp.*, 411 F. Supp. 2d 89, 92 (D. Conn. 2006) (citing Restatement (Second) of Torts § 564); *see also QSP*, 256 Conn. at 356 (citing Restatement (Second) of Torts § 564)); Restatement (Second) of Torts § 564 ("A defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands that it was intended to refer.").

Under the Second Restatement of Torts:

> One who publishes defamatory matter concerning a group or class of persons is subject to liability to an individual member of it if, but only if,
>
> (a) the group or class is so small that the matter can reasonably be understood to refer to the member, or
>
> (b) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.

Restatement (Second) of Torts § 564A; *see also Dontigney*, 411 F. Supp at 92 (citing *id.*).

Here, the Statement refers to "anti-gun groups, members of the mainstream media, trial attorneys, and other uniformed and agenda-driven parties." Am. Compl. ¶ 5. It goes on to state that "[i]n all cases, these individuals have an ulterior motive behind their baseless allegations . . . ." *Id.* The Plaintiffs' allegations that a "very small group of trial attorneys . . . has tried . . . jury trials against Sig [Sauer]," and that Mr. Bagnell is "a trial attorney who . . . has represented . . . clients in active litigation against Sig [Sauer]" is sufficient to satisfy the identification element at the pleading stage. *Id.* ¶¶ 9, 10. *Compare Elias v. Rolling Stone LLC*, 872 F.3d 97, 105 (2d Cir. 2017) ("At this stage of the litigation, Plaintiffs need only plead sufficient facts to make it

11

plausible—not probable or even reasonably likely—that a reader familiar with each Plaintiff would identify him as the subject of the statements at issue."), *id.* at 108 ("We thus agree with the District Court that Phi Kappa Psi is sufficiently small that its members can plausibly claim that the Article's statements defamed each individual member."), *Lafferty v. Jones*, No. X06UWYCV186046436S, 2021 WL 5911541, at *5 (Conn. Super. Ct. Nov. 18, 2021) ("[W]hen applying the standards from *Elias* to the present case, it can be seen that the group libel test is satisfied such that all of the plaintiffs have stated a legally sufficient false light cause of action against the defendants."); *with Dontigney*, 411 F. Supp. 2d at 93 ("Here, Dontigney has alleged no facts from which a reasonable person could infer that any statements or characterizations in 'A Man Called Horse' mentioned or were 'of and concerning' plaintiff himself. Nor has he alleged any circumstances from which it could be inferred that the film suggested a reference to him even if it did not name him. Nor can it be said that the group or class of Native Americans is so small that a reasonable viewer necessarily would believe the film was directed toward Dontigney."); *Devone v. Finley*, No. 3:13-CV-00377 CSH, 2014 WL 1153773, at *9 (D. Conn. Mar. 20, 2014) ("Indeed, six of the above eight allegations upon which Plaintiff appears to rely in his claim of defamation do not involve Defendant identifying Plaintiff to any third person, nor do they appear to be reasonably understood to be specifically *about* Plaintiff.").

The Statement's reference to other groups does not negate the plausible identification of Mr. Bagnell as part of the Statement's "trial attorneys." The Statement also specifically mentions these lawsuits and how the claims have been dismissed, suggesting that the claims are brought for ulterior motives. Am. Compl. ¶ 5 ("Claims that unintended discharges are anything more than negligent handling and/or manufactured lies to support an anti-gun, anti-SIG agenda are false. Furthermore, lawsuits claiming that the P320 is capable of firing without the trigger being pulled

12

have been dismissed in courtrooms around the country. In addition, multiple plaintiffs' so-called experts have conceded, it is not possible for the P320 to discharge unless the trigger is fully actuated.").

Thus, the Plaintiffs have stated a viable defamation claim.

Accordingly, the motion to dismiss the libel *per se* claim will be denied.

### B.  The CUTPA Claim

The Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. §§ 42-110a, *et seq.*, provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," Conn. Gen. Stat. § 42–110b(a), and provides a private cause of action for "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42–110b," *id.* § 42-110g(a).

"To state a claim under CUTPA, a plaintiff must plead that [they] (1) suffered an ascertainable loss of money or property, (2) that was caused by, (3) an unfair method of competition or an unfair or deceptive act in the conduct of any trade or commerce." *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 100 (D. Conn. 2016), *aff'd*, 666 Fed. App'x 84 (2d Cir. 2016).

Sig Sauer argues that the CUTPA claim fails because it depends on the defamation claim, which in their view, fails. MTD Mem. at 14–15.

The Plaintiffs argue that they have stated a CUTPA claim based on a viable defamation claim, and independent of any defamation claim. Opp'n at 18–19. They allege that, absent the defamation claim, Sig Sauer made false statements about the safety of the P320 and about the litigation to deceive consumers, which would be redressable under CUTPA. *Id.* at 19.

13

The Court agrees, for the most part.

Because the Plaintiffs have stated a viable defamation claim, they have also stated a viable CUTPA claim, and the Court need not address whether a viable CUTPA claim exists independent of the alleged defamation claim. *See* Conn. Gen. Stat. § 38-816(3) (listing defamation as an unfair practice actionable under CUTPA); *CSL Silicones, Inc. v. Midsun Grp. Inc.*, 301 F. Supp. 3d 328, 370 (D. Conn. 2018) ("A plaintiff may sue pursuant to CUTPA 'for claims that might otherwise be available in tort, or that are at least similar to common law torts,' a category within which defamation falls." (internal citation omitted) (quoting *Brown v. Rawlings Fin. Servs., LLC*, 868 F.3d 126, 131–32 (2d Cir. 2017))); *Indiaweekly.com*, 596 F. Supp. 2d at 507 ("Even if the allegations of the CUTPA claim do not rise to the level of statutory or common law torts, they may still violate CUTPA."); *cf. NetScout*, 334 Conn. at 430 ("Our conclusion that the trial court properly rendered summary judgment for the defendant on the defamation claim is also dispositive of the plaintiff's claim that the trial court improperly rendered summary judgment for the defendant on the CUTPA claim. Because the defendant's statements about the plaintiff in the 2014 report were nonactionable expressions of opinion, and because the plaintiff failed to present sufficient evidence to support its pay to play claim, we are compelled to conclude that the plaintiff has failed to establish a viable claim within the purview of CUTPA.").

Accordingly, the motion to dismiss the CUTPA claim will be denied.

IV.    **CONCLUSION**

For the foregoing reasons, the Defendant's motion to dismiss is **DENIED**.

**SO ORDERED** at New Haven, Connecticut, this 30th day of March, 2026.

14

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

15